Argument not to exceed 15 minutes per side. Mr. Perkins for the appellant. Good morning, Your Honors, and good morning to your staff, members of the court. My name is Todd Russell Perkins, appearing on behalf of the plaintiff appellant in this matter, Ms. Sinkfield. My argument is rather succinct, and I think, and I apologize, I am using approximately 7 minutes for my argument, which I don't even think will take the 7 minutes, but I reserve 7 minutes, or excuse me, 8 minutes for rebuttal. That's fine, thank you. Thank you very much, Your Honor. Thank you. In this matter, we've appealed a decision from Judge, the Honorable Judge Robert Cleland, who summary, who dismissed this matter by way of summary disposition. Essentially finding, and we believe an errant finding, that our client, stopping short necessarily of saying outright fraud, but again, there is the application of judicial estoppel in a matter in which our position is the doctrine of some issue preclusion should never be applied when a fact is in dispute. That fact being in dispute is there was, from a factual situation, there was a bankruptcy that was filed in December, I believe, of 2011, ultimately discharged in April of 2012. The fire in this particular matter occurred in June of 2012. From that point of view, and there were some amendments to the bankruptcy proceeding in which our client claimed $4,000 worth of items or assets. From that point, I believe that's part of the amendments that occurred in February of 2012. After that, my client then filed for a claim with State Farm. Once that claim was filed, she, on her own volition without counsel at that time, then proceeded to complete the information necessary to process the claim. That claim was ultimately denied. The basis of the denial was State Farm indicated that there was some fraud or misrepresentation on behalf of our client because of the great difference in amount from the bankruptcy and from what she claimed. Right. She emerges from bankruptcy in April of 2011, right? Yes. At that time, she claims her personal property is $4,000. Correct. Fourteen months later there's a fire and now she claims her personal property is $170,000, right? Correct. So the question is, what reasonable explanation is there for this increase from $4,000 to $170,000 claim against State Farm? Well, her position has always been, and I believe the record substantiates this, is that her position is these are assets required after the bankruptcy. These are not items that were committed or owned at the time the bankruptcy was filed. Because if they were, I think counsel's right. There's no question about it. But the litigious issue here is, one, what we believe is a case in which Ms. McLaughlin, her character has been indicted to the extent that because of the amount that she's claimed as far as how much revenue she's generated in a year, are you able to claim this amount of assets? Well, she's indicated and she's been able to substantiate some of it with verifiable proof that she's received a lot of gifts. She's received some gifts from her daughter and things of that nature. But what it does is it opens up the door to make it a legal issue of fact that should go to the trier fact. And that's her position. Now, whether or not a jury finds that she's being credible or whether or not those issues are, it's still a litigious issue. So it's something that should go to the trier fact. Well, if she had an explanation, even if the explanation might seem incredible, that would get you what Judge Gilman just referred to as this gap, that would be an issue of credibility. But as you just stated, if she has $13,000 in gifts and some little income she claimed, that doesn't come close to filling that gap. So how can you say there's a genuine issue of fact if you can't even, on her unsupported testimony, get anywhere near closing that gap? May I hear? Sure. Thank you. Well, what our position is, is that notwithstanding the issue of some response as it relates to that, she's laid the groundwork and made a statement as it relates to what she believes or what she's offered as her position. I did own these matters. And now what she's done or what the court, I believe, is doing is putting her in a position that requires her to respond to questions that would ultimately be required to be determined by a trier of fact. Tell me a little bit about the house also. As I understood it from one part of the record, in bankruptcy she said the house was worth $27,000 and 14 months later she claims for $143,000. Are those the right numbers? These are, just a moment, Your Honor, if I may go to that page, which I believe you're referring from our brief. Well, your brief, now that's a separate matter. On page two of your brief you say she reported its value as $420,000, which I can't find substantiated anywhere and I assume is a complete mistake. But I don't know. If you look at the fourth paragraph on page two of your brief, it refers to Schedule A and says she reported it as $420,000, but that's not what Schedule A says, so I don't know where that $420,000 comes from. And I would acknowledge that that's an error in the brief right there. But as the court indicated, answering your question and getting to the question that you asked me, these are values that are going by, she's not an expert in the area of real estate. She's relying upon values that she's received from other individuals during this process. Now, to the extent that the record doesn't reflect that argument or that question, that I can only respond to it. Are you claiming that there's some record or evidence somewhere that somebody told her the house was worth $143,000 when it burned? Absolutely. Is that in the record anyway? And I believe that that's in the record of the submission, not necessarily part of the motion for summary disposition issues, but part of the underlying record and part of the discovery process that went on. I'm sorry, so where is that? Where would I find it in the record if I wanted to? And that was what I was responding to. I don't believe that that's in the record that you have that's on appeal right now. So I'm not going to offer something to you that's not necessarily here. Well, you've got this situation, though. She pays $50,000 for the house in November of 2010. A year and a half later, there's the fire. And now she's claiming $143,000 value. That's quite an appreciation, isn't it? It is, Your Honor. And to that extent, as I said to the Honorable Boggs in this matter, I can offer you a response to that, but I can't offer you a response necessarily that it's included in your record that you have for me to answer on appeal. Okay, you'll have your remaining time for rebuttal. Oh, I'm sorry. I didn't realize. Thank you. Good morning, Your Honors. Kerry Berlin on behalf of State Farm. I don't know if it will necessarily impact Your Honor's decision, but I do think just a quick discussion about the standard of review might be necessary, as the case of Javery v. Lucent told us there is some, I guess, dispute between what is the proper standard of review, whether it is abuse of discretion or de novo. I don't know if the case turns on that, but I think that it can almost be a hybrid type where you have whether or not judicial estoppel was properly applied can be abuse of discretion, and then whether or not that leads to a proper finding of summary judgment is then de novo. With regard to the estoppel, though, isn't it fair to say that the only thing that she should be estopped from is claiming that the house or the property was worth more than she put in the bankruptcy? That is, if in fact she won the lottery and she's got the lottery ticket and the picture with the check, there wouldn't be any judicial estoppel against this claim, would there? I believe there still would, because based on the uncontested facts in the trial court is we went through her inventory using her ages of when she said she acquired these things, and based on the $4,000, she claimed we had that number at $113,000 and some change in terms of how much was in her possession at that time. So she either failed to, either she drastically undervalued those assets of zero, or she completely concealed them from the bankruptcy court. But you didn't answer Judge Boggs' hypothetical. Okay. I still think it would, because you can still have, she was asked several times, I guess if there was nothing else that was, if that was the only fact we had, that she had a bankruptcy, she presents a claim, and then she won the lottery, and to show she was able to acquire this amount of However, in this case, we have a little different in that she was asked multiple times, first in her examination under oath, then in interrogatories, and then finally in response to the motion for summary judgment, she was asked, show us how you get from $4,000 to $170,000, and she testified she received $6,659.06 worth of gifts. She had a 2011 tax return of $11,678. She received some unemployment benefits, social security benefits, and child support. She had cash from promoting a strip club, and $3,500 from, she said, in connection to her social club. She's fudging on her income tax, right? Well, something obviously is not adding up. So you put all that together and giving her every benefit of every doubt, the unreported and the reported, she has $32,988. That puts aside the argument she made in the bankruptcy court that her income wasn't enough to cover her monthly obligations, that there was a negative. So she somehow was able to use $32,988, not paying any mortgage or utilities, and use it all for personal property, which she now wants to say is worth $166,000. You said something, and I just want to focus on this, about whether she claimed that she had owned this stuff before the bankruptcy date. And I tried to look at some of these inventories. They're very lengthy, but I didn't see any claimed date of acquisition there. Is there something else? Were you saying that she admitted or claimed that she owned this personal property before the bankruptcy? Yes. We have her updated inventory, and then the ER-17 is the affidavit from Elizabeth McGee, who went through the inventory using the ages and came up with those numbers. I'm sorry, just give me a particular page that says, I owned this at some previous time, or I bought them at some particular time. It would be on the updated inventory, which I'll go see which one. I don't have all of it. I have Exhibit I and Exhibit L before me. It would be ER-17-13. And that is the McGee... No, I'm sorry, that's the amended personal property inventory. The McGee affidavit is 17-14. Okay, thank you. Yes. So there is, and again, if she was going to challenge the affidavit that we provided or some of the facts that were asserted, the time to do that was in the trial court. Well, you know, I mean, you may have a more solid ground on the fraud basis than on the judicial estoppel basis. Well, I believe they are entwined. I believe that you used the judicial estoppel to bind her to what she said. But she's not claiming that she admits that I only had 4,000 of personal property at the time of bankruptcy. She's not now trying to say, well, I really had more or less. Well, that's kind of a changing argument, because in the trial court, there was the evidence put forth that she was claiming that she had 4,000 of the things that we valued at $113,000. So I do think there is a judicial estoppel issue for those items going forward. Now she's claiming that she bought it all after the bankruptcy, and then we get to the fraud issue there. So I think there are two issues that kind of become intertwined. Why should this not be? These are factual questions, not a question of law. It's a question of fact. Why shouldn't it go to the jury? Well, I think Judge Cleland addressed that when he said a reasonable juror could not find in favor of Ms. Sinkfield on these issues. For some of the questions Your Honor asked about, how do you get from 4,000 to $170,000 in 14 months when she has failed to put forth any proof to create a question of fact? All she did in response to the motion was say, if the court wants an affidavit, I'll provide one. If I promise to do this later, which the courts have always found is not sufficient, she needed to come forth with a fact at that time to create a question of fact. I'll do it later, or I'll tell the jury what my facts are is insufficient, in my view. So I think that's where the lack of a question of fact, which was found by Judge Cleland, comes from, is that she didn't challenge any of it. She agreed with basically all the State Farm facts, save a couple. And then the one she didn't challenge, she was required under Judge Cleland's rules to put forth a counter statement of fact if she had any, and she failed to do that as well. There have been cases that have found similar to Judge Cleland. We have the Mathis versus Mid-Century Insurance Company case from the Eastern District of Missouri. In that case, their claim to bankruptcy court was $800, and then six months later she presented a claim to her insurance company for $93,166.70 for the personal property. And the court found that was a material misrepresentation in violation of the policy or fraud as a matter of law. And the court mentioned there was the large divergence between those two numbers, similar to what Judge Gilman was asking, just could not be explained. Similarly, in Fidelity versus Jamison Means, a 2008 case from the Middle District of Alabama. In that case, there was $2,300 claimed of personal property in bankruptcy, and then one month later, $41,818.63. The court again found that was barred by judicial estoppel, saying that the plaintiff asserted a position in her claim to the insurer that was inconsistent with previously claimed to assert under oath, I'm sorry, in the bankruptcy court. And that inconsistency was barred by judicial estoppel. So under similar facts, courts have found that that is sufficient to use judicial estoppel to bar claims, because it does establish fraud as a matter of law, particularly when there's no counter evidence to rebut it. With respect to the house, where does the $143,000 number come from? I believe she is using State Farms Repair Estimate. She, if my memory serves, and again, because it wasn't part of the, I mean, we asked her to limit to the, we asked the court to limit it to the $27,000 if he, if Judge Cleveland was going to deny the motion. So he never really addressed whether he was accepting that, not accepting that, but I believe she's using State Farms Repair Estimate for that amount. His, the judge's opinion makes a citation to plaintiff's response to interrogatories at page ID 333. Is that the source of, is that the same thing that you're telling me now? Yes, yes, we asked her to specify all damages she was seeking, and my guess is that's where she would have put forth that amount. You're saying that's a guess, that that connects to the State Farm Repair Estimate, is the estimate in the record? It would probably be. But you don't know where? No, I don't know, I don't know for sure, because I don't know if that was ever. Because again, it's mathematically not impossible, it's existentially not impossible that the house went from being worth $27,000 to $143,000, you know, if oil was discovered. If we were all that lucky that our houses appreciated that much, we'd all be much happier in our real estate purchases. Unless the court has any questions, I have nothing further. Okay, thank you, counsel. Thank you. Perkins, you have eight minutes for rebuttal. Again, may it please this honorable court, just to tie in what brother counsel has given to the court. Nothing that he says changes what our client says. And it's almost an all or nothing position that our client is in, in not going at the point in time saying, hey, I'll give you an affidavit if you need one. But nonetheless, the record is sufficient with what we have. She makes a claim that these items were acquired after the bankruptcy. So to the extent there's some mathematical application of $4,000 going towards the $113,000 claimed, and then an additional amount. But we can't say just because this young lady's income is $32,000 that she can't acquire assets. She's made a claim that she's acquired them through gifts. She's made a claim that, and to a certain extent with the affidavit that counsel spoke of, even in that affidavit and even in his brief, he indicates that Ms. Singfield said that I own these items more than a year. And more than a year still leaves an ambit of time that these items can be acquired. And using, borrowing Judge Gilman's phrase, existentially, nonetheless, it's sufficient to establish that there is a question of fact that should go to a trier of fact. And what I do, I analogize what Judge Cleland has done. And as this court recognizes, you know, sometimes, especially in a criminal matter, you have a probable cause proceeding. And I have my own personal experience in this regard. And a probable cause proceeding that goes up and it gets found over to a circuit court and a state court proceeding. And they choose not to do the indictment, but the probable cause proceeding. And you file a motion in saying, that's just wrong. They're flat out wrong. And what happens is that judge who doesn't afford the evidentiary hearing to take place or doesn't afford the trial to take place and then allowing that testimony to be complete in the record with the permission to cross-examine this affidavit who made this claim as to whether or not it's a year from the time that the affidavit was filed, a year from the time that, you know, how was that interpreted by Ms. Sinquefield? All of these issues would go to bolster her position that it is a substantial question of fact. Furthermore, the issue as it relates to the value, and sometimes I have lapses as I get up here. Sometimes being before this place, sometimes it gets to you. But the information that Brother Counsel has supplied and told the court, these are numbers particularly to the value of the home. That's not necessarily a mischaracterization or should discolor any claims by Ms. Sinquefield because that's information that has been offered through the vestiges and professionals at State Farm. So it's not, to a certain extent, it's not an element that should go, that issue with respect to the value of the home, there's still some substantial basis as to how that got into the record. So I would ask the court to consider this a question of fact. To the extent there may be some limitation based upon income, I don't think that that would even be proper because she's indicated I had gifts and she's supplied some receipts as it relates to her daughter having given her some gifts. But she still makes that statement, and based upon the statement that she makes, it's still an issue that I believe should go to a trial of fact. Thank you. Thank you, Counsel. Case will be submitted. Clerk may call the next case.